THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| BRUNILDA AYALA,<br>        **Plaintiff,**<br>        v.<br>ERIC K. SHINSEKI, Secretary,<br>Department of Veterans Affairs<br>        **Defendant.** | **CIVIL NO.** 10-1342(JAG) |

OPINION AND ORDER

GARCÍA-GREGORY, D.J.

Pending before the Court is Eric K. Shinseki's ("Defendant") motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Docket No. 34). For the reasons outlined below, the motion is hereby **GRANTED** in part and **DENIED** in part.

PROCEDURAL BACKGROUND

Brunilda Ayala ("Plaintiff") is Program Support Assistant at the Veterans Affairs Caribbean Healthcare System, Office of Geriatrics and Extended Care ("VA"). (Docket Nos. 35, 39). On March 13, 2009, Plaintiff filed an Equal Employment Opportunity ("EEOC") complaint with the Department of Veterans Affairs, Office of Resolution Management ("ORM"). (Docket No. 35-1). Although the EEOC complaint itself was not filed as an exhibit with this Court, the ORM's Corrected Letter for Partial Acceptance of EEOC Complaint ("Acceptance Letter") states that

CIVIL NO. 10-1342(JAG)                                                    2

Plaintiff alleged to have been the victim of several retaliatory acts by the VA for having filed previous EEOC complaints. Id.[1]

The ORM accepted two of Plaintiff's claims for investigation: (1) whether Plaintiff was retaliated against when, around October 3, 2008, she was transferred to work with a social worker; (2) and whether Plaintiff was retaliated against when, on November 6, 2008, she received a performance evaluation based on duties she had not performed. Id.

On January 28, 2010, the Department of Veterans Affairs, Office of Employment Discrimination Complaint Adjudication ("OEDCA") issued its Final Agency Decision. (Docket No. 35-2). The Agency determined that Plaintiff had established a prima facie case of retaliation. Id. at 7.[2] Plaintiff showed that she had recently engaged in EEOC activity, that her supervisor knew of this activity, and that she was reassigned within months to work with the social worker. Id. The Agency further stated that it was the reassignment what "ultimately led to [the] performance evaluation issued… in November, 2008." Id. Secondly,

---

[1] The Acceptance Letter makes reference to EEOC complaints dated February 28, 2001; March 24, 2003; August 6, 2004; June 11, 2007; and March 13, 2009. (Docket No. 35-1).

[2] "To prove a claim of retaliation, a plaintiff must establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (citing Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002)).

CIVIL NO. 10-1342(JAG)                                                3

the OEDCA determined that Defendant had articulated a legitimate reason for Plaintiff's reassignment and the resulting performance evaluation. Id.[3] To this effect, the record established that Plaintiff was transferred because there was no other work for her to perform and her newly assigned duties fit the job description for Program Support Assistant. Id. Plaintiff was also consulted prior to her reassignment, and she expressed willingness to assume the new tasks. Id. Furthermore, the Agency emphasized that Plaintiff's performance evaluation was "fully successful," and that she had received the same positive rating the two previous years. Id. Finally, the Agency concluded that Plaintiff had failed to provide evidence to suggest that Defendant's proffered reasons were in fact pretext. Id.[4] Accordingly, the OEDCA determined that Plaintiff had failed to prove her claim of retaliation by a preponderance of the evidence. Id. The ORM's investigative record, on which OEDCA based its determinations, was not filed as an exhibit with this Court.

---

[3]  After a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the employer, who must articulate "a legitimate, nondiscriminatory reason" for its actions. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

[4] At the last step of the inquiry, "the plaintiff must… prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-04 (1973)).

CIVIL NO. 10-1342(JAG)                                              4

On April 26, 2010, Plaintiff instituted this civil action pursuant to Title VII's antiretaliation provision, 42 U.S.C. § 2000e-3(a). (Docket No. 1). The complaint recounts incidents taking place between the years 2000 and 2009, although without making reference to specific dates and using imprecise language. Id. Plaintiff alleges that around the year 2000, in retaliation for filing an EEOC complaint, she received a poor recommendation from her supervisor, Román, and was also relocated to an office in an empty building. Id. From there she was moved to another office where there was a leak of sewage water, where she remained for some time, at least until September, 2004. Id. Around this date, now under Dr. Melba Feliciano's ("Feliciano") supervision, Plaintiff accused Feliciano of lying on her time card and leaving the office to see patients at her private practice. Id. After this incident, Plaintiff was transferred to a small, windowless office and stripped of all her duties. Id. As a result, Plaintiff received her performance evaluations based on duties she did not have. Id. Finally, Plaintiff added that she had been passed up for statutory promotions and salary increases since the year 2000. Id.

Defendant moves for summary judgment on four grounds. (Docket Nos. 35, 36). First, Defendant maintains that only those allegations regarding Plaintiff's lack of duties and the performance evaluations are at issue, given that all other

**CIVIL NO.** 10-1342(JAG)                                                    5

claims are time barred. (Docket No. 36). Secondly, Defendant argues that Plaintiff failed to establish a prima facie case of retaliation with regard to the timely claims. Id. More specifically, Defendant maintains that Plaintiff failed to adduce sufficient evidence (a) that there was an adverse action taken against her, and (b) that Defendant's actions were causally related to her filing of previous EEOC complaints. Id. Defendant further avers to have proffered legitimate, nondiscriminatory explanations for every action taken with respect to Plaintiff. Id. Finally, Defendant argues that Plaintiff did not meet her ultimate burden of establishing that Defendant's explanations were a pretext for discrimination, given that no evidence of discriminatory animus towards Plaintiff was introduced. Id.

Plaintiff opposes Defendant's summary judgment motion, asserting that there is a factual dispute with regard to whether Defendant has taken actions which adversely affected her. (Docket No. 41). In particular, Plaintiff contends that there is an issue of fact as to whether she was being assigned any duties. Id. Similarly, Plaintiff claims that there is a dispute with regard to whether being moved to a small, windowless office and assigned no duties by Defendant constitutes an adverse action. Id. Plaintiff additionally argues that there is an issue of fact concerning the extent to which Plaintiff's supervisors

CIVIL NO. 10-1342(JAG)                                          6

had knowledge about her various EEOC complaints. Id. Finally,
Plaintiff maintains that there is a factual dispute with regard
to the damage suffered by her. Id.

### STANDARD OF LAW

A motion for summary judgment is governed by Rule 56 of the
Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a). "Summary
judgment is appropriate when the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law." Meléndez v.
Autogermana, Inc., 622 F.3d 46, 49 (1st Cir. 2010) (citing FED.
R. CIV. P. 56(c)). The objective of summary judgment is to "pierce
the pleadings and to assess the proof in order to see whether
there is a genuine need for trial." Matsushita Elec. Indus. Co.
v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing FED. R.
CIV. P. 56(e) advisory committee's note to the 1963 amendment).
The party moving for summary judgment bears the burden of
showing the absence of a genuine issue of material fact. See
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In
prospecting for genuine issues of material fact, we resolve all
conflicts and draw all reasonable inferences in the nonmovant's
favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir.
2008).

CIVIL NO. 10-1342(JAG)                                                   7

"Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party…." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citing DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)); Cruz-Claudio v. García Trucking Serv., Inc., 639 F. Supp. 2d 198, 203 (D.P.R. 2009). The nonmovant must demonstrate "through submissions of evidentiary quality[] that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). Furthermore, on issues "where the [nonmovant] bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (citing United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carrol v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002). "An issue is 'genuine' if the evidence on record permits a rational factfinder to resolve it in favor of either party." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st Cir. 2010)

CIVIL NO. 10-1342(JAG)                                                    8

(citing <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990)). A fact is "material" if it has the potential to change the outcome of the suit. <u>See</u> <u>Martínez v. Colón</u>, 54 F.3d 980, 984 (1st Cir. 1995).

Therefore, summary judgment may be appropriate if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." <u>Forestier Fradera v. Municipality of Mayagüez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (citing <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that, throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. <u>Anderson</u>, 477 U.S. at 255.

**DISCUSSION**

**1.   Relevant Facts**

Given the record's lack of precision, particularly with regard to the dates in which the various actions by the VA took place, the Court's task of "pierc[ing] the pleadings [] to assess the proof in order to see whether there is a genuine need for trial" has been difficult. <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, the record establishes the following timeline.

-8-

CIVIL NO. 10-1342(JAG)                                                                      9

In February 28, 2001, the Plaintiff filed an EEOC complaint. (Docket No. 35-1). Another EEOC complaint was filed by her on March 24, 2003. Id. Together, these complaints alleged that Plaintiff was moved by her supervisor, Román, to an office in an empty building; that she was then moved to another office where there was a leak of sewage water; that Plaintiff received a poor recommendation from Román when she applied for a position with the Drug Enforcement Administration ("DEA"); and that Román characterized her as unreliable during an EEOC investigation. Id. Therefore, all of these events must have taken place prior to March 24, 2003.

Plaintiff filed a third EEOC complaint on August 6, 2004. Id. Therein she alleged to have been transferred to work under a new supervisor, Feliciano. Id. This transfer, then, must have taken place in the months preceding August, 2004.

Around September, 2004, Plaintiff had to report her new supervisor for fraud, as Feliciano used to come to the VA in the morning, punch her time card, and leave shortly thereafter to treat patients at her private practice. (Docket No. 44, Exhibit 3A). Plaintiff alleges that Feliciano proceeded to strip Plaintiff of all her duties, and that she had no responsibilities "by the next pay period." (Docket No. 44, Exhibit 3B). Feliciano maintains, however, that she gives assignments to Plaintiff, and that Plaintiff is currently

CIVIL NO. 10-1342(JAG)                                      10

"answering the phone [and] taking papers from one office to another office." (Docket No. 44, Exhibit 4).

On June 11, 2007, Plaintiff filed a fourth EEOC complaint. (Docket No. 35-1). Besides recounting the September, 2004 incident regarding Feliciano's private practice, this EEOC complaint further alleged that Plaintiff was moved to a small, windowless office by Feliciano. Id. In her deposition, Plaintiff stated that she has been in that office for the past seven years. (Docket No. 44, Exhibit 3A). The relocation, therefore, must have occurred at some point in late 2004.[5]

On November 6, 2008, Plaintiff received a fully successful performance evaluation, a page of which she refused to sign. (Docket No. 35-3). On April 29, 2009, Plaintiff received a fully successful progress review, which she signed. (Docket No. 44, Exhibit 2A). On May 13, 2010, Plaintiff received a progress review indicating her performance needed improvement to be considered fully successful, which she did not sign. Id. Plaintiff did not sign the evaluations because, according to

---

[5] According to the Acceptance Letter and her deposition, Plaintiff worked with a social worker for three months between the years 2008 and 2009. (Docket Nos. 35-1, 44, Exhibit 3A). Plaintiff stated that she was quickly reassigned because Feliciano and the social worker disagreed with how she was performing her job. (Docket No. 44, Exhibit 3A). Plaintiff has not alleged this reassignment constituted part of the retaliation. (Docket No. 1).

CIVIL NO. 10-1342(JAG)                                              11

her, they were based on duties she was not performing. (Docket No. 44, Exhibit 3A).

Finally, Plaintiff alleges to have been passed up for statutory promotions and salary increases since the year 2000. (Docket Nos. 1, 44, Exhibit 3B). This testimony has not been contradicted.

### 2.   Continuing Violation Doctrine

Title VII requires that, in deferral jurisdictions such as Puerto Rico, charges of discrimination be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). See also Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 611 (1st Cir. 2000). However, this requirement may be subject to equitable exceptions. Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir. 2002).

One such exception is the continuing violation doctrine, which is applicable "where the plaintiff experiences a number of discriminatory acts arising from the same discriminatory animus" and at least one of the acts occurred inside the filing period. Id. (quoting Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990)). In Morgan, nevertheless, the Supreme Court made clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely

CIVIL NO. 10-1342(JAG)                                          12

filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.
101, 113 (2002). That is, each discrete act "starts a new clock
for filing charges alleging that act." Id. The Supreme Court
listed "termination[s], failure[s] to promote, denial[s] of
transfer, refusal[s] to hire," and other easily identifiable
incidents as examples of discrete discriminatory acts. Id. at
114.

     In keeping with Morgan, the First Circuit in Miller held
that the transfer of an employee to another department is a
discrete discriminatory act, subject to the 300-day limitations
period. Miller v. N.H. Dep't of Corr., 296 F.3d 18, 22 (1st Cir.
2002). Moreover, Miller held that giving a warning letter and
issuing a negative performance evaluation were also discrete
acts, whose limitations periods began to run the moment the
employee received them. Id. To support this holding, the First
Circuit emphasized the employee's immediate appeal of the
warning letter and the evaluation through the internal review
procedures established by his employer. Id. The First Circuit
also brought up a memorandum written by the employee in response
to the warning letter, in which he stated he felt "abused and
retaliated against…." Id. The First Circuit reasoned that the
employee's "recognition eliminate[d] any argument that the
warning and evaluation did not 'have any crystallized
implications or apparent tangible effects' at the time they were

**CIVIL NO.** 10-1342(JAG)                                                            13

issued." Id. (citing Thomas v. Eastman Kodak Co., 183 F.3d 38, 55 (1st Cir. 1999)).

Although not clearly stated, Plaintiff appears to invoke application of the continuing violation doctrine to her case. (Docket No. 1). Nevertheless, each incident the complaint alludes to is easily identifiable and qualifies as a discrete discriminatory act under Morgan, starting a new clock for filing an administrative charge. 536 U.S. at 113.[6] Because Plaintiff filed the EEOC complaint at issue on March 13, 2009, all retaliatory acts that took place before May 17, 2008 fall outside the 300-day limitations period and are, therefore, time barred.[7] Summary judgment is granted as to them. The retaliation claims that remain viable are those concerning the performance evaluations Plaintiff has received since 2008, as well as her claims regarding the VA's failure to promote Plaintiff or

---

[6] Again, the retaliatory acts alleged are receiving a poor recommendation; being moved to different offices; being stripped of all duties; not being given promotions and raises; and, finally, receiving sham performance evaluations. (Docket No. 1).

[7] As in Miller, this Court's holding with respect to the VA's taking away of Plaintiff's responsibilities in 2004 is further supported by her various emails to her supervisor, in which she repeatedly complained about her reassignments and lack of duties, dated 2005 and 2006. (Docket No. 44, Exhibit 5). It is evident that Plaintiff recognized a discriminatory quality on this action by the VA well before March 13, 2009. Also revealing are Plaintiff's several prior EEOC complaints. (Docket Nos. 1, 35-1). Plaintiff should have acted on her earlier claims more promptly.

increase her salary from 2008 onwards. The Court now turns to these claims.

### 3.    Timely Retaliation Claims

Title VII's antiretaliation provision makes it unlawful for "an employer to discriminate against any of his employees… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The three-step, burden-shifting framework developed by the Supreme Court in McDonnell Douglas is applicable to Title VII retaliation claims. See Burdine, 450 U.S. at 252 (citing McDonnell Douglas, 411 U.S. at 792-93); see also Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995). Significantly, the plaintiff carries at all times "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her]…." Id. at 253 (citing Bd. of Trs. of Keene State Coll. v. Sweeney, 439 U.S. 24, 25 n.2 (1978) (Stevens, J., dissenting)); see also Udo, 54 F.3d at 12.

Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. 411 U.S. at 802. The required prima facie proof varies depending on the nature of the discrimination claim. Id. at 802 n.13. For her claim of

CIVIL NO. 10-1342(JAG)                                                    15

retaliation, Plaintiff must show "that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Calero-Cerezo, 355 F.3d at 25 (citing Gu, 312 F.3d at 14).[8]

After a plaintiff proves her prima facie case, the burden of production shifts to the employer, who must articulate "a legitimate, nondiscriminatory reason" for its actions. Burdine, 450 U.S. at 254. Nevertheless, at this step "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 254.

Finally, at the last step of the inquiry "the plaintiff must… prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253 (citing McDonnell Douglas, 411 U.S. at 803-04).

---

[8] The protected conduct requirement is satisfied where there is a charge filed with the EEOC. See Sánchez-Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 14 (1st Cir. 2012); see also Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007) ("[The plaintiff] undoubtedly engaged in a protected activity when he contacted… the EEOC alleging he was the target of illegal discrimination."). Plaintiff satisfies this prong, as the record shows she filed at least five EEOC complaints. (Docket No. 35-1).

CIVIL NO. 10-1342(JAG)                                              16

### a.   Plaintiff's Performance Evaluations

Plaintiff claims to have been retaliated against when she received performance evaluations based on duties she was not performing. (Docket Nos. 1, 44, Exhibit 3A). Specifically, on November 6, 2008, Plaintiff received a fully successful performance evaluation which she refused to sign for that reason. (Docket Nos. 35-3, 40).

To establish a prima facie case of retaliation, the plaintiff needs to show that "a reasonable employee would have found the challenged action materially adverse…." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (internal quotations marks omitted) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Materially adverse actions are those "that are likely to dissuade employees from complaining or assisting in complaints about discrimination." Burlington, 548 U.S. at 70. This "is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64. However, "[a]n allegedly retaliatory act must rise to some level of substantiality before it can be actionable." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) (citing Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir.1998)).

In Potter, the First Circuit listed various examples of materially adverse actions of retaliation: "termination of

CIVIL NO. 10-1342(JAG)                                            17

employment, a demotion evidenced by a decrease in wage or
salary, a less distinguished title, a material loss of benefits,
significantly diminished material responsibilities, or other
indices that might be unique to a particular situation." Potter,
605 F.3d at 36 (citing Lapka v. Chertoff, 517 F.3d 974, 986 (7th
Cir. 2008)). In Hernández-Torres, the First Circuit also listed
"unwarranted negative job evaluations, and toleration of
harassment by other employees" as adverse actions. Hernández-
Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st
Cir. 1998). Nevertheless, "petty slights, minor annoyances, and
simple lack of good manners," as well as other minor workplace
disruptions, fail to qualify as materially adverse. Potter, 605
F.3d at 36 (citing Burlington, 548 U.S. at 68).

Defendant contends that, because her performance
evaluations were fully satisfactory, the actions that Plaintiff
alleges were retaliatory do not rise to the level of materially
adverse. (Docket Nos. 35, 36).[9] The Court agrees with Defendant.
It is unlikely that receiving a positive performance evaluation
could dissuade a reasonable employee from engaging in protected
conduct. See Burlington, 548 U.S. at 70 ("By focusing on the

---

[9] On May 13, 2010, Plaintiff received a progress review that she
refused to sign, which stated that her performance needed
improvement to be considered fully successful. (Docket No. 44,
Exhibit 3B). Nevertheless, Plaintiff does not rebut Defendant's
assertion that her performance evaluations were always fully
successful. In fact, she admits to this in her response to
Defendant's statement of uncontested facts. (Docket No. 39 ¶ 8).

CIVIL NO. 10-1342(JAG)                                                18

materiality of the challenged action and the perspective of a
reasonable person in the plaintiff's position, we believe this
standard will screen out trivial conduct while effectively
capturing those acts that are likely to dissuade employees from
complaining or assisting in complaints about discrimination."').
See also Taal v. Hannaford Bros. Co., 211 F. App'x 4, 5 (1st
Cir. 2006) (claim of retaliation was held as "completely
unsupported and belied by the record" where plaintiff
consistently got positive performance evaluations and modest
increases in her wage); Hernández-Torres, 158 F.3d at 47 (noting
that the plaintiff continued to receive favorable performance
evaluations from his supervisors when holding that being given a
warning to complete his work "or else" was not an adverse
employment action). Moreover, Plaintiff failed to proffer an
explanation for her contention that receiving the allegedly sham
evaluations "alienated her from any possible salary increase,
reclassification, or any type of prospective improvement in her
employment conditions." (Docket No. 41 at 13). Absent such an
explanation, it is not clear to the Court how a fully successful
appraisal, accurate or not, could negatively impact an
employee's career prospects. Therefore, summary judgment is
granted with regard to Plaintiff's claim of receiving fully
successful performance evaluations that referenced duties she
was not performing.

CIVIL NO. 10-1342(JAG)                                              19

### b.   Plaintiff's Lack of Promotions and Salary Increases

Plaintiff contends that, in retaliation for her prior EEOC activity, she has been passed up for statutory promotions and statutory salary increases, presumably on a yearly basis, since the year 2000. (Docket Nos. 1, 44, Exhibit 3B). The Court will only consider the VA's failure to promote Plaintiff or give her a raise from May 17, 2008 onward.

Being repeatedly passed up for promotions or raises qualifies as a materially adverse action. An employee who reasonably believes that engaging in EEOC activity will significantly diminish her opportunities for career growth is likely to be dissuaded from bringing a claim of discrimination. See Hernández-Torres, 158 F.3d at 47 (listing failures to promote, demotions, and disadvantageous transfers as examples of materially adverse actions). Moreover, this failure on the VA's part falls in line with the examples of materially adverse actions of retaliation listed by the First Circuit in Potter.[10]

The next question, then, is whether Plaintiff has succeeded in establishing the requisite connection between her filing of

---

[10] "[T]ermination[s] of employment, demotion[s] evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Potter, 605 F.3d at 36 (citing Lapka v. Chertoff, 517 F.3d 974, 986 (7th Cir. 2008)).

CIVIL NO. 10-1342(JAG)                                                                                20

prior EEOC complaints and her lack of promotions and raises. The third prong of the prima facie case requires "concrete documentation [proving] the causal link between [the plaintiff's] protected activity and her retaliatory treatment." Ramos v. Roche Products, Inc., 936 F.2d 43, 49 (1st Cir. 1991) (citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)). The passage of time, however, weakens any inference of causation. Dressler v. Daniel, 315 F.3d 75, 80 (1st Cir. 2003) (citing Lewis v. Gillette Co., 22 F.3d 22, 25 (1st Cir. 1994)). In Dressler, for instance, the First Circuit affirmed a grant of summary judgment in favor of the employer where two years had elapsed between the protected activity and the alleged retaliatory actions. Id. at 79-80.

There is sufficient evidence in the record to support an inference of a causal connection between Plaintiff's protected activity and the VA's failure to promote her and increase her salary. First, Plaintiff engaged in EEOC activity quite frequently, filing five complaints with the ORM. (Docket No. 35-1). She also sent numerous emails to her supervisors complaining about her lack of duties and other employment-related actions. (Docket No. 44, Exhibit 5). Feliciano's deposition shows that she was well aware of Plaintiff's EEOC complaints, and she also seemed to believe they were all directed at her. (Docket No. 35-

CIVIL NO. 10-1342(JAG)                                         21

4).[11] Moreover, her most recent EEOC complaint, aside from the
March 13, 2009 EEOC filing, is dated June 11, 2007. (Docket No.
35-1). The record also shows that Plaintiff contacted an EEOC
counselor on November 17, 2008, with regard to initiating her
March 13, 2009 EEOC complaint of retaliation. Id. Accordingly,
with respect to her claim of being passed up for promotions and
salary increases since May 17, 2008, Plaintiff has established a
prima facie case of retaliation.

    Under McDonnell Douglas, the burden of production now
shifts to the employer, who must articulate "a legitimate,
nondiscriminatory reason" for its actions. Burdine, 450 U.S. at
254. "It is sufficient if the defendant's evidence raises a
genuine issue of fact as to whether it discriminated against the
plaintiff." Id. at 254. "If the defendant carries this burden of
production, the presumption raised by the prima facie case is
rebutted, and the factual inquiry proceeds to a new level of
specificity." Id. at 255.

    Defendant claims to have acted "based on legitimate, non-
discriminatory reason[s]." (Docket Nos. 10, 34). More
specifically, in the memorandum of law filed in support of the
summary judgment motion, Defendant declares that "[h]aving thus

---

[11] "Q: Okay. Well, let me ask you before, are you familiar with
[Plaintiff's] complaints? [Feliciano's] A: With all the EEO[C]
complaints she had done against me? Q: EEO[C] and a court
complaint. [Feliciano's] A: Yes, I'm familiar…." (Docket No. 35-
4 at 7).

CIVIL NO. 10-1342(JAG)                                                          22

articulated   [a]   legitimate,   facially   non-discriminatory
explanation, all presumptions of discrimination now drop from
the  case."  (Docket  No.  36  at  11).  However,  Defendant  never
specifies what these reasons are. Nor does he point to specific
sections of the record where this non-discriminatory explanation
is apparent. Therefore, Defendant has failed to carry his burden
of production. Summary judgment with regard to Plaintiff's claim
of being passed up for promotions and salary increases since May
17, 2008 is, therefore, denied.

**CONCLUSION**

For  the  reasons  stated  above,  Defendant's  motion  for
summary judgment, (Docket No. 34), is hereby **GRANTED** in part and
**DENIED**  in  part.  Summary  judgment  is  granted  as  to  all
retaliatory acts that took place before May 17, 2008, and also
with regard to Plaintiff's claim of receiving fully successful
performance  evaluations  that  referenced  duties  she  was  not
performing. Summary judgment is denied as to Plaintiff's claim
of being passed up for promotions and salary increases since May
17, 2008.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of July, 2012.

                                   S/ Jay A. García-Gregory
                                   JAY A. GARCÍA-GREGORY
                                   United States District Judge